IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS D. CROCK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 08-680 ) Chief Judge Lancaster |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster,
Chief Judge

June 26, 2010

## I. Introduction

Plaintiff Thomas D. Crock ("Crock") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. For the reasons that follow, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings.

## II. Procedural History

Crock protectively applied for DIB and SSI benefits on January 11, 2005, alleging disability as of June 15, 1998. (R. at 13, 83,

1

641). The applications were administratively denied on November 3, 2005. (R. at 75, 646). Crock responded on March 2, 2006, by filing a request for an administrative hearing. (R. at 80). On September 10, 2007, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Timothy Pace (the "ALJ"). (R. at 37). Crock, who was represented by counsel, appeared and testified at the hearing. (R. at 39-72). Testimony was also taken from Dr. Fred Monaco ("Dr. Monaco"), an impartial vocational expert. (R. at 66-69). In a decision dated October 17, 2007, the ALJ determined that Crock was not "disabled" within the meaning of the Act. (R. at 10-22). The Appeals Council denied Crock's request for review on March 14, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 5).

On May 19, 2008, Crock sought leave to proceed *in forma pauperis* in this action against the Commissioner. (Doc. No. 1). Such leave was granted the next day, and Crock filed his complaint. (Doc. No. 2). Nevertheless, the Court dismissed Crock's action on September 30, 2008, pursuant to Federal Rule of Civil Procedure 41(b). (Doc. No. 6). The basis for the dismissal was Crock's failure to effectuate the service of a summons and complaint upon the Commissioner in conformity with Federal Rule of Civil Procedure 4(m), and his failure to respond to an order to show cause issued by the Court on September 18, 2008. (*Id.*). Crock filed a motion for reconsideration on October 15, 2008, but the motion was denied

2

two days later. (Doc. Nos. 7 & 8).

Crock appealed the dismissal of his case to the United States Court of Appeals for the Third Circuit on October 29, 2008. (Doc. No. 9). In an order dated June 30, 2009, the Court of Appeals vacated the dismissal order and remanded the case back to this Court for further proceedings. (Doc. No. 12). The Court of Appeals reasoned that since Crock had been granted leave to proceed *in forma pauperis*, it was the responsibility of the Court to effectuate the service of process upon the Commissioner. (Doc. No. 12-1 at 3). Consequently, Crock was permitted to proceed with this action.

Crock filed a *pro se* motion for summary judgment on January 14, 2010, raising various arguments against the Commissioner's decision. (Doc. No. 23). The Commissioner moved for summary judgment on February 16, 2010. (Doc. No. 25). Crock filed a counseled motion for summary judgment on March 23, 2010, after securing the services of an attorney. (Doc. No. 30). On May 19, 2010, the Commissioner filed a supplemental motion for summary judgment. (Doc. No. 34). These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).

The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be

unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a

5

"substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by

6

substituting what it considers to be a more adequate or
proper basis. To do so would propel the court into the
domain which Congress has set aside exclusively for the
administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. Discussion

In his decision, the ALJ determined that Crock had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 15). Crock was found to be suffering from a personality disorder, a depressive disorder, and bronchial asthma. (R. at 15-17). Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), the ALJ concluded that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 17-18).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Crock's residual functional capacity as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work. He is capable
> of understanding, carrying out, and remembering simple,

low stress instructions. He must avoid jobs that requires [sic] more than minimal interaction with others. Due to his asthma, he must avoid exposure to dust, fumes, and other pulmonary irritants.

(R. at 18). Given the limitations found by the ALJ, it was determined that Crock could not return to his past relevant work as a financial planner or an intake officer. (R. at 20).

Crock was born on January 16, 1953, making him forty-five years old as of his alleged onset date and fifty-four years old as of the date of the ALJ's decision. (R. at 20, 46-47). Under the Commissioner's regulations, Crock was classified as a "younger person" as of his alleged onset date and as a "person closely approaching advanced age" after reaching the age of fifty. 20 C.F.R. §§ 404.1563(c)-(d), 416.963(c)-(d). Having graduated from Indiana University of Pennsylvania with a degree in economics, Crock had more than a high school education. (R. at 46, 209); 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4). He was clearly able to communicate in English. (R. at 21). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Crock could work as a bench assembler, document preparer, machine feeder, or off-bearer. (R. at 21). Dr. Monaco's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). (R. at 68).

Crock argues that the ALJ's hypothetical question to Dr.

8

Monaco was deficient. (Doc. No. 29 at 5-15). At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). In order for a vocational expert's answer to a hypothetical question to constitute "substantial evidence" of the existence of jobs consistent with a claimant's residual functional capacity, the hypothetical question itself must adequately convey to the vocational expert *all* of the claimant's credibly established limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). If a credibly established limitation is omitted from the administrative law judge's hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002).

During the course of the administrative hearing, the following colloquy occurred between the ALJ and Dr. Monaco:

> Q. All right. For purposes of this, because I got two, two age groups to consider since '98. Assume a younger individual, work history as described, high school education plus, work history as described, does possess a driver's license. Let's put it at light. These occupations I want to keep with low stressors, these occupation [sic] not involve sales, because of the bronchial asthma

minimal exposure to environmental irritants or temperature extremes. No hire [sic] than SVP three or four to keep with the low stress environment, although the claimant is intelligent. Minimal interaction with the public and coworkers in these occupations, what, [sic] if any, jobs exist at the light level for such an individual?

A. Your Honor, there would be jobs in the national economy to accommodate your hypothetical. Representative sample one would be bench assembly, the individual is assembling various products, [sic] there are approximately 737,000 light positions in the national economy. A second representative sample would be document preparers, individuals converting microfiche and film to paper and vice versa, [sic] there are approximately 300,000 light positions in the national economy. A third representative sample would be machine feeders and off-bearers, [sic] there are approximately 723,000 light positions in the national economy.

Q. Is this all inclusive?

A. Excuse me?

Q. Are these jobs representative or all inclusive?

A. Representative, Your Honor.

Q. Does this information comport with the DOT?

A. Yes, Your Honor.

Q. Now you've heard the claimant's testimony. He, he did work as a financial planner, [sic] I think the longest job he said was a year, a year and three-quarter, janitor job theoretically okay, practically, no. He couldn't say initially but that he indicated that he would have adjustment difficulties after two, three months. He did show, he said he's late to his therapist, [sic] I asked him why, [sic] he could not give me an answer. He is a litigant in a number of cases ongoing with various, various institutions. He's had 10 to 20 moving or otherwise traffic tickets over the course of the last several years. He did say he does have

>           friends and can deal with the public generally
>           speaking, [sic] he does indicate he has a messy
>           house, [sic] he is able to operate a motor vehicle,
>           [sic] he has had periods of incarceration, [sic] he
>           can live alone. Given the-and he indicated to me
>           that he was intolerant of fools. Given the
>           limitations as set forth by the claimant's
>           testimony would that impact his ability to do the
>           aforementioned jobs?
>
> A.        Well, Your Honor, those type of personality issues
>           would certainly be limiting to any kind of job but,
>           frankly, it would be based on the job.
>
> Q.        Well, are, are you saying, well, tell me this. If
>           he gets these jobs is he going to maintain them
>           given the testimony?
>
> A.        No.

(R. at 67-69). As this exchange illustrates, Crock's ability to hold the jobs identified by Dr. Monaco depends, to some extent, upon the precise nature of his interactions with other individuals.

Having reviewed both the ALJ's residual functional capacity finding and his hypothetical question to Dr. Monaco, the Court is convinced that the hypothetical question was deficient in three respects. First, there is an inconsistency between the ALJ's finding that Crock could have only "minimal interaction with *others*" and the portion of the hypothetical question stating that he could have only "[m]inimal interaction with *the public and coworkers.*" (R. at 18, 67)(emphasis added). While the word "others" would appear to be inclusive of supervisors, supervisors are generally not perceived to be analogous to ordinary coworkers (or other members of the general public) within the specific

context of an employer/employee relationship. Second, while the ALJ specifically found that Crock was capable of understanding, carrying out and remembering only short, simple instructions, no such limitation was included within the hypothetical question posed to Dr. Monaco. (R. at 18, 67). Finally, the ALJ's hypothetical question indicated that Crock could tolerate "*minimal* exposure to environmental irritants or temperature extremes," whereas the ultimate residual functional capacity finding appeared to preclude *any* "exposure to dust, fumes, and other pulmonary irritants." (R. at 18, 67)(emphasis added). Because the hypothetical question did not account for some of the limitations expressly found by the ALJ, Dr. Monaco's testimony does not constitute "substantial evidence" of the existence of jobs consistent with Crock's residual functional capacity. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Thus, the ALJ's decision cannot stand even if it is assumed that he committed no errors in determining that Crock was capable of performing a limited range of light work.[1]

Dr. Link Manella ("Dr. Manella"), a nonexamining medical consultant, opined on September 13, 2005, that Crock was "moderately limited" in his "ability to accept instructions and

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

respond appropriately to criticism from supervisors." (R. at 420). Interestingly, Dr. Manella indicated that there was "no evidence of limitation" in Crock's ability to "interact appropriately" with members of the "general public," "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," or "to maintain socially appropriate behavior." (*Id.*). Given that Dr. Manella found no limitations concerning Crock's ability to interact with coworkers and members of the general public, it is significant that he specifically found Crock to be "moderately limited" in his ability to interact appropriately with supervisors within the context of an employer/employee relationship.[2] Dr, Manella stated in his written "explanation of findings" that Crock could "sustain an ordinary routine *without special supervision.*" (R. at 421)(emphasis added).

The record contains evidence of inappropriate behavior on the part of Crock. For instance, Crock acknowledged at the hearing that he had spent some time in jail for mailing nude pictures of himself to underage waitresses who were working at a restaurant frequented by him. (R. at 63-65). The documentary record indicates that Crock has repeatedly been cited for violating

---

[2] In light of Dr. Manella's findings, the Court cannot accept the Commissioner's argument that any error committed by the ALJ in formulating his hypothetical question was harmless. (Doc. No. 35 at 17). In his brief, the Commissioner implicitly concedes that it was improper for the ALJ to omit any limitations that Crock had with respect to his ability to interact appropriately with supervisors within the context of an employer/employee relationship. (*Id.*).

various Pennsylvania statutes. (R. at 132-155). In addition, Crock has apparently tried to obtain invalid identification cards in order to access swimming pool facilities owned and operated by entities such as Duquesne University, the University of Pittsburgh, the Jewish Community Center, and the Young Men's Christian Association. (R. at 311, 314). The Commissioner argues that Crock's inability to maintain a job is largely attributable to his questionable behavior rather than to a medically determinable mental impairment. (Doc. No. 35 at 20-21).

A disability determination under the Act does not turn on "whether a specific job vacancy exists" for the claimant, or "whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Therefore, the Commissioner need not prove that employers in the national economy would be willing to hire Crock. It is sufficient for the Commissioner to establish the existence of jobs in the national economy that are consistent with Crock's residual functional capacity, age, education, and past work experience. *Boone*, 353 F.3d at 205.

The Commissioner simply did not satisfy his burden of proof in this case. The Court acknowledges that the ALJ was not required to account for every limitation *alleged* by Crock. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ was free to omit any proposed limitations that were lacking in evidentiary support. *Johnson v. Commissioner of Social Security*, 529 F.3d 198,

205-206 (3d Cir. 2008). The problem in this case, however, is that the ALJ's hypothetical question did not simply omit limitations that were deemed to be nonexistent. Instead, it omitted limitations that were ultimately incorporated within the ALJ's own residual functional capacity finding. (R. at 18, 67).

Relying on the Supreme Court's recent decision in *Shinseki v. Sanders*, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009), the Commissioner argues that Crock cannot obtain a remand without demonstrating that the errors committed by the ALJ were prejudicial. (Doc. No. 35 at 17). The statute at issue in *Shinseki* was a provision of the Veterans Claims Assistance Act of 2000 ("VCAA") requiring the Secretary of Veterans Affairs ("Secretary") to provide notice to veterans seeking disability benefits when additional evidence is needed to substantiate their claims. Pub. L. No. 106-475, 114 Stat. 2096, 2096-2097 (2000); 38 U.S.C. § 5103(a). The Supreme Court held that it was improper for a reviewing court to apply a rigid presumption that the Secretary's failure to strictly comply with the notice provision in a particular instance was prejudicial to the claimant. *Shinseki*, 129 S.Ct. at 1704-1706. Speaking through Justice Breyer, the Supreme Court declared that the party attacking an agency's administrative determination normally bears the burden of establishing that he or she was prejudiced by the alleged error at issue. *Id.* at 1705-1706. Nevertheless, the Supreme Court also observed that "courts may sometimes make

empirically based generalizations about what kinds of errors are likely, as a general matter, to prove harmful." *Id.* at 1707.

The Court does not understand the narrow holding in *Shinseki* to displace the broader holding in *Chenery Corp.* In a Social Security disability proceeding, a reviewing court has no license to affirm a decision of the Commissioner, on a basis other than that actually relied upon by the Commissioner, because its independent review of the record indicates that the claimant is not disabled. *Fargnoli*, 247 F.3d at 44, n. 7. Moreover, the rule requiring a remand for further proceedings where an administrative decision denying a claimant's application for Social Security disability benefits is based on a vocational expert's answer to an incomplete hypothetical question identifies a type of error that, "as a general matter," is likely "to prove harmful." *Shinseki*, 129 S.Ct. at 1707. At the fifth step of the sequential evaluation process, the Commissioner bears the burden of *proving* the existence of jobs in the national economy that are consistent with the claimant's residual functional capacity and vocational background. *Sykes v. Apfel*, 228 F.3d 259, 263-273 (3d Cir. 2000). That burden cannot be satisfied by a showing that jobs exist in the national economy that are consistent with *someone else's* (i.e., a less limited individual's) residual functional capacity and vocational background. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982).

It is also worth noting that, unlike the situation at issue in

*Shinseki*, the administrative error in this case is a step removed from the basis upon which a finding of harmless error could potentially be made. The record contains documentary evidence indicating that Dr. Perry Henschke ("Dr. Henschke"), Crock's treating therapist at the University of Pittsburgh Medical Center's Western Psychiatric Institute and Clinic, did not believe Crock to be disabled. (R. at 299). At the hearing, Crock acknowledged that he would regularly spend a considerable amount of time working on a computer in connection with *pro se* litigation initiated by him. (R. at 62-63). Hence, the administrative record contains plenty of evidence indicating that Crock is not disabled, and that he is capable of performing the duties of a full-time job. This evidence, however, relates to the ALJ's residual functional capacity determination *itself*. It is completely untethered from the ALJ's failure to clearly articulate Crock's limitations (as found by the ALJ) in the hypothetical question to Dr. Monaco. Because Dr. Monaco's testimony was based on a hypothetical question that did not properly correspond with the ALJ's residual functional capacity finding, such testimony did not satisfy the Commissioner's burden of *proof* at the fifth step of the sequential evaluation process. *Ramirez*, 372 F.3d at 552-555. The Commissioner cannot cure his own failure of proof simply by arguing that he would have been able to meet his burden if the ALJ's hypothetical question had been properly articulated. *Walker v. Barnhart*, 258 F.Supp.2d 693,

701-702 (E.D.Mich. 2003). Given the Commissioner's failure of proof, it cannot be said that his decision is "supported by substantial evidence." 42 U.S.C. § 405(g).

## V. Conclusion

Although the Commissioner's decision in this case cannot stand, it certainly cannot be said that Crock has satisfied the standard for securing a judicially-ordered award of benefits. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)(explaining that an immediate award of benefits is proper only where a fully developed administrative record points in favor of a finding that the claimant is disabled). Accordingly, the proper remedy is a remand for further proceedings.[3] The Court expresses no opinion concerning the extent to which Crock's questionable behavior is attributable to a medically determinable personality disorder.

AND NOW, this 26th day of June, 2010, IT IS HEREBY ORDERED that the motions for summary judgment filed by the Defendant (Doc. Nos. 25 & 34) are DENIED, and that the motions for summary judgment filed by the Plaintiff (Doc. Nos. 23 & 30) are DENIED to the extent that they request an award of benefits but GRANTED to the extent that they seek a vacatur of the decision of the Commissioner of Social Security, and a remand for further administrative proceedings. In accordance with the fourth sentence of 42 U.S.C.

---

[3] In light of this disposition, there is no need for the Court to address the arguments raised in Crock's *pro se* brief. (Doc. No. 23).

§ 405(g), the administrative decision of the Commissioner of Social Security is hereby VACATED, and the case is remanded to him for further proceedings consistent with this opinion.

BY THE COURT:

_____
Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All counsel of record